### In re PHILLIPS & GOLDMAN.

(District Court, E. D. New York. February 1, 1912.)

1. BANKRUPTCY (§ 172*)—CLAIMS—COLLATERAL.

> A life policy payable to bankrupt's estate not assigned on insurer's records, and available only by surrender or of future realization if payment of premiums be continued, cannot be deemed collateral in the hands of creditors, especially where it is left in the possession of the attorney for the bankrupts as well as the creditors.

> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 172.*]

2. BANKRUPTCY (§ 143*)—CLAIMS—LIFE POLICIES—DISPOSITION.

> After the time for proving claims against bankrupt partners' estate, life policies, possessing cash surrender value, but claimed by creditors to be held by them for loans in excess of such value advanced to pay premiums, are brought into court. The policies were not assigned on insurer's records, nor held in the actual possession of the creditors. *Held* that, unless redeemed by bankrupts, the policies should be considered as belonging to the estate, with leave to bankrupts to release them by depositing their present value with the trustee, which fund may be applied to payment of such creditors' claims on proof of the claims; the creditors having no right to insist that plenary suit be brought by the trustee to determine his claim to the fund.

> [Ed. Note.—For other cases, see Bankruptcy, Dec. Dig. § 143.*]

In the matter of Phillips & Goldman, bankrupts. On motion to open a discharge. Motion denied.

Jacob H. Denenholz, Trustee.

Arthur Gutman, for bankrupts and secured creditors.

CHATFIELD, District Judge. [1] This motion, after a reference, several defaults, and many orders on the part of the court, has resulted in the matter being submitted from the point at which it should have started upon the first argument. The attorney for the bankrupts, who were partners, has brought into court two policies of insurance upon the lives of these partners. This attorney also represents two relatives of these bankrupts, and has held the policies under a claim that each was assigned as security for a loan some twelve months before the bankruptcy proceedings. In the case of the bankrupt Phillips the policy is for $1,000, the premiums having been paid for four years, and at the time of the adjudication the cash surrender value was $63. The loan is alleged to have been made June 10, 1909, and was for $100. The policy was scheduled in the bankrupts' assets as assigned to one Jacobs to secure a loan of $250. In the case of the other policy issued to the bankrupt Goldman for the sum of $2,000, premiums had been paid for five or more years, the surrender value was $126, and the bankrupt included it in his schedules as having been assigned as security for a loan of $200.

It now appears from the affidavits that these loans were for the payment of premiums upon these very policies and no paper or assignment in writing was ever made, nor were the policies ever transferred from the possession of the attorney who represented all of the parties in the transaction. More than a year has elapsed since ad-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

judication, the creditors have never come in and yielded up their security nor asked to have the amount of their debt fixed, but have relied upon the possession of the collateral in their own hands. The result of this situation is anomalous. The alleged creditors are now unable to prove their claims against the estate and have the trustee in bankruptcy pay their claims out of whatever may be realized from the policies, inasmuch as the year within which to prove claims has expired. The claims, if valid, are substantially as much in amount as the trustee could hope to recover from an immediate realization upon the policies if they be surrendered, and, on the other hand, the bankrupt has the right to continue the policies in force by paying to the trustee a sufficient fund to represent the immediate value of the policies. The claimants, if they had collateral in their possession from which they could realize by their own action, would be in a position to retain the security and pay themselves out of the proceeds. But a policy of life insurance not assigned in writing upon the company's records, payable to the estate of the bankrupt and available only by surrender or of future realization if the payment of premiums be continued, is certainly not such security as can ordinarily be considered collateral for a loan, and particularly where the policies themselves are left in the possession of the attorney for the bankrupts as well as the creditors.

[2] The result of the whole matter would seem to be that the policies under the statute should be subject to the provision that, unless redeemed by the bankrupt, they may be considered the property of the estate. Assuming that the amounts of the alleged loans are equivalent to the value of these policies if surrendered, and that the bankrupts are able to redeem them, an order should be made giving the bankrupts the opportunity to deposit with the trustee in bankruptcy a sufficient amount to release these policies from the claim of the trustee, and this amount will then be subject to the claim of the alleged secured creditors for the purpose of paying their debts, if they can prove same before the referee. Their possession was sufficient, through their attorney, to enable them to enforce their claim against the collateral whether or not the year within which to prove a claim generally against the estate has expired, if the original loans can be established.

On the other hand, it is impossible to hold that rights under these policies or any tangible collateral was actually in the possession of these creditors in such a way as to give them a right to insist upon having a plenary suit brought to determine the claim of the trustee to the fund. Their claim is not that of title, with power to pay themselves therefrom, but was, on the contrary, merely a claim of the right to notice or to protection if the insurance policy were at any time reduced to money or should lapse.

The motion to open the discharge will be denied.